```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  06/28/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
WALTER NEIRA SANCHEZ,                                       :
                                    Plaintiff,             :
                                                           :          16 Civ. 7784 (LGS)
                    -against-                              :
                                                           :          **OPINION AND ORDER**
NEW YORK KIMCHI                                            :
CATERING, CORP., et al.,                                   :
                                    Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Walter Neira Sanchez brings this action under the Fair Labor Standards Acts

("FLSA") and the New York Labor Law ("NYLL") against his alleged former employers,

Defendants New York Kimchi Catering, Corp., Gum Gang Inc. ("Gum Gang"), Un Cha Kim and

Sandra Yoo.  He moves for class certification on his claims arising under NYLL pursuant to

Federal Rule of Civil Procedure 23 ("Rule 23").  For the following reasons, his motion is granted

in part and denied in part.

**I.    BACKGROUND**

    **A.    The Parties**

        Defendant Yoo owns Defendant Gum Gang, which operates a restaurant called "New

York Kimchi" in Manhattan.  Defendant Kim has been the bookkeeper, payroll clerk and office

manager of Gum Gang's restaurant since February 2015.  Defendant New York Kimchi

Catering, Corp. occupied the restaurant premises before Gum Gang opened around March 2014.

Defendant Kim attests that Gum Gang and New York Kimchi Catering, Corp. are unrelated

entities.

        According to Plaintiff, between February 2014 and November 2014, he worked as a

"delivery person at Defendants' 'New York Kimchi' restaurant and catering, event planning, and

food delivery service."  According to Defendant Kim, Gum Gang has no record that Plaintiff "worked for Gum Gang Inc. or worked at the 'New York Kimchi' restaurant."

### B.     Defendants' Alleged Wage and Hours Policies

Plaintiff attests that "[b]ased on [his] personal observations and conversations with other employees, all other non-managerial employees employed by Defendants at New York Kimchi were subject to similar wage and hour policies, including, but not limited" to eight individuals who were also delivery persons and another individual who was a cook.  Plaintiff does not specify whom he observed, what positions they held, or to whom he spoke.  As to the nine individuals, he does not attest that he spoke with them and identifies seven by first name only.

With respect to the Defendants' alleged policies, Plaintiff avers that all non-managerial employees, including Plaintiff:

- were paid a "straight-time regular hourly rate" rather than the one and one-half rate for overtime hours, i.e., hours worked in excess of 40 hours per workweek;
- never received the "spread of hours" premium when their workdays exceeded 10 hours;
- never received any written wage and hour notice at the time of hiring informing them of their rates of pay or other requirements under New York law; and
- never received a wage statement with each payment of wages.

Plaintiff also attests that he was a tipped employee and his hourly rate of pay was $5.00.

For tipped employees, including Plaintiff, he attests:

- they were paid at hourly rates that were at all times below the prevailing minimum wage;
- they never received any notices that Defendants were taking a tip credit;
- they spent at least 2 hours per day or 20 percent of their time performing non-tipped activities;
- the tips they received were retained by Defendants at catering events, and they received only nominal tip amounts, regardless of the actual amount in tips they earned; and
- Defendants retained approximately 60 percent of the tips earned by tipped employees on each customer order paid for by credit card.

2

The other evidence Plaintiff adduces comes solely from a wage and hour lawsuit that Plaintiff's counsel brought against Defendants and settled in May 2016, *Burgos v. New York Kimchi Catering, Corp.*, No. 15 Civ. 1971 (S.D.N.Y. May 6, 2016) ("*Burgos* litigation").[1]  That evidence includes three pages of timesheets from two of the plaintiffs in the previous action who, like Plaintiff, were delivery persons and two paystubs from one of those individuals.  It also includes the deposition transcripts of Defendant Kim and Mohammad Aveek, who worked as a delivery person for several months until he became manager in February 2015.

### C.    This Action

The Complaint alleges one count under FLSA and one count under NYLL.  The count arising under NYLL alleges five distinct claims.  First, Defendants failed to pay overtime compensation at the lawful rate for hours worked in excess of 40 hours per workweek.  *See* 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.4.  Second, Defendants failed to pay a spread of hours premium for each workday that exceeded ten hours.  *See id.* § 146–1.6.  Third, Defendants did not provide wage and hour notices at the beginning of an employee's employment or any time thereafter.  *See* N.Y. Lab. Law § 195(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2.  Fourth, Defendants did not provide proper wage statements, i.e., paystubs, with each payment of wages.  *See* N.Y. Lab. Law § 195(3); N.Y. Comp. Codes R. & Regs. tit. 12, § 146–2.3.  Fifth, Defendants failed to pay tipped employees the minimum wage because Defendants were not entitled to take any tip credits.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.3.

---

[1]  Plaintiff was not a party to the *Burgos* litigation.  Defendants do not argue that the settlement reached by the three plaintiffs in *Burgos* binds Plaintiff or otherwise precludes him from asserting his claims on behalf of himself or a class of other employees that does not include the *Burgos* plaintiffs.

Plaintiff moves for class certification under Rule 23 on the NYLL claims, seeking certification of the NYLL claims "on behalf of all non-exempt employees employed by Defendants at 'New York Kimchi' located at 16 West 48th Street, New York NY 10036 on or after the date that is six (6) years before the filing of the initial Complaint."  He also seeks to certify a subclass of tipped employees "including but not limited to waiters, bussers and delivery persons, employed by Defendants" related to the alleged minimum wage violations.  Plaintiff requests that his counsel, Lee Litigation Group, PLLC, be appointed class counsel.

## II.   STANDARD

Under Rule 23(a), plaintiffs may sue as a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A class must also satisfy at least one of the requirements contained in Rule 23(b).  Fed. R. Civ. P. 23(b); *see Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  Here, Plaintiff seeks certification under Rule 23(b)(3), which permits class certification only if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23 "'does not set forth a mere pleading standard.'  Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  This requires a "rigorous analysis" that "frequently entail[s] overlap with the merits of the plaintiff's underlying claim."  *Roach*, 778 F.3d at 407

4

(quoting *Comcast*, 133 S. Ct. at 1432).  The plaintiff must establish by a preponderance of the

evidence that each of Rule 23's requirements is met.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d

223, 264 (2d Cir. 2016).

## III.   DISCUSSION

### A.   Overtime and Spread of Hours Claims

#### 1.  Plaintiff's Proposed Class of All Non-Exempt Employees

As to the overtime claim and spread of hours claim, Plaintiff's proposed class definition

of all non-exempt employees dating back to 2010 is denied without prejudice to renewal.  For

both claims, Plaintiff's proposed class fails because he has not proven commonality or typicality.

The commonality requirement is met if a plaintiff's claims "depend upon a common

contention" that is "of such a nature that it is capable of classwide resolution -- which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350; *accord Johnson v. Nextel Commc'ns

Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  Typicality is satisfied where "each class member's claim

arises from the same course of events and each class member makes similar legal arguments to

prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35

(2d Cir. 2009); *accord In re Virtus Investment Partners, Inc. Sec. Litig.*, No. 15 Civ. 1249, 2017

WL 2062985, at *3 (S.D.N.Y. May 15, 2017).

"[T]he commonality and typicality requirements of Rule 23(a) tend to merge" in certain

contexts, *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (quoting *Wal-

Mart*, 564 U.S. at 349 n.5), including claims under NYLL.  Specifically, courts have found that

commonality and typicality may be satisfied if the plaintiff offers sufficient proof that the

defendant had either an explicit or de facto class-wide unlawful labor policy or practice.  *See,*

*e.g.*, *Masoud v. 1285 Bakery Inc.*, No. 15 Civ. 7414, 2017 WL 448955, at *5 (S.D.N.Y. Jan. 26, 2017); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 269–72 (E.D.N.Y. 2016) (noting that if "a plaintiff provides proof of a common policy or practice on the part of the defendant to underpay its workers, courts frequently find typicality to be satisfied for largely the same reasons that they find commonality to be satisfied").

For the overtime claim regarding Defendants' alleged policy of paying the regular hourly rate for all hours worked, the only evidence Plaintiff adduces is (1) his own declaration and (2) three pages of timesheets of two individuals who were delivery persons.  This is insufficient to show by a preponderance of the evidence either an explicit or de facto restaurant-wide policy of paying regular hourly rate instead of overtime rate.

Although commonality and typicality may be established based on employee declarations, *see, e.g.*, *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289–90 (S.D.N.Y. 2015), *aff'd*, No. 15-3941-CV, 2017 WL 1379369 (2d Cir. Apr. 14, 2017) (summary order), Plaintiff's sole declaration is of minimal value in this case.  Plaintiff, who worked in a single position, opines broadly that -- based on his own experience and "personal observations and conversations with other employees" -- all other non-managerial employees were paid regular hourly rates rather than an overtime rate.  Plaintiff, however, does not testify regarding who or what he personally observed.  He also does not identify to whom he spoke or when he spoke to them.  These conclusory statements cannot sustain his assertion of a restaurant-wide policy dating back to 2010.  *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30, 47 (E.D.N.Y. 2016) (noting that conclusory statements contained in a declaration "lack the kind of precision and detail from which the Court might infer a uniform policy on the part of the Individual Defendants to deny compensation to their employees"); *Fernandez v. Wells Fargo Bank, N.A.*, No. 12 Civ. 7193,

2013 WL 4540521, at *8 (S.D.N.Y. Aug. 28, 2013) (noting that statements contained in declarations were of limited value where it "include no dates (not even approximations) of when the[ alleged] communications took place" and identified "none of the speakers or participants in these communications").

The timesheets are similarly unavailing. They concern the two plaintiffs in the *Burgos* litigation who, like Plaintiff, were delivery drivers. They are of limited value to support a finding of restaurant-wide commonality and typicality. *See Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518, 2017 WL 1954934, at *4 (S.D.N.Y. May 10, 2017) (refusing to include kitchen employees in class with tipped employees where the plaintiffs lacked direct evidence regarding compensation of kitchen employees). Further, the timesheets do not reflect that these individuals were consistently paid at the regular hourly rate rather than the overtime rate. To the contrary, they show that, at least for some weeks, individuals were at times paid at an overtime rate, which is corroborated by a paystub adduced by Plaintiff.

Plaintiff's evidence also carries little weight because it is temporally limited. He seeks a class dating back to 2010 but his affidavit and timesheets concern only part of 2014 and roughly two months in 2015. He also fails to offer any documentary evidence regarding Defendant New York Kimchi Catering Corp.'s compensation policies, which operated the premises for a majority of the proposed class period, i.e., 2010 to 2014.

Lastly, Plaintiff's evidence is not unrebutted. Both Defendant Kim and Aveek testified that Defendants paid employees an overtime rate rather than a regular rate for hours worked in excess of 40 hours. Accordingly, Plaintiff has failed to show by a preponderance of the evidence commonality and typicality for the overtime claim on behalf of a class of all non-exempt employees dating back to 2010.

7

Similarly, as to the spread of hours premium, Plaintiff's only evidence is a conclusory statement in his affidavit and a single week in a "punch clock record" by a *Burgos* plaintiff for which Plaintiff argues the corresponding timesheet reveals no spread of hour premiums were paid.  The affidavit merely states, "Based on my personal observations and conversations, other non-managerial employees" were not paid a spread of hours premium.  The punch clock record and timesheet are of limited value because Plaintiff offers no deposition testimony or other evidence explaining what the punch clock record reflects.  Plaintiff also asserts in his memorandum of law that an "[e]xamination of Defendants' documents for other pay periods demonstrate[s] Defendants' consistent failure to pay any spread of hours premium for workdays exceeding 10 hours."  "An attorney's unsworn statements in a brief are not evidence."  *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009).  Therefore, as to his spread of hours claim, Plaintiff has failed to carry his burden to show commonality and typicality for a proposed class of all non-exempt employees who worked for Defendants from 2010 to the filing of the Complaint.

### 2.  Plaintiff's Alternative Theory for Tipped Employees Only

Plaintiff offers an alternative basis for certifying the overtime claim and spread of hours claim that is applicable to tipped workers only.  Specifically, he argues that even if Defendants paid employees one and one-half times their regular rate for hours worked in excess of 40 hours in a workweek or paid a spread of hours premium, they nonetheless failed to pay the tipped workers the required amounts.  Citing the testimony of Aveek and Defendant Kim, Plaintiff states that for employees whose compensation included a tip credit, Defendants unlawfully deducted the tip credit allowance to determine the regular hourly rate, which was then multiplied by one and one-half to calculate the overtime rate.  New York law, however, requires that the overtime rate for tipped employees be one and one half times the prevailing minimum wage with

the tip credit then deducted.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.4; *see Flores v. Anjost Corp.*, 284 F.R.D. 112, 117 (S.D.N.Y. 2012).  Plaintiff makes a similar assertion based on the same evidence for the spread of hours claim, arguing that the premium should have been the prevailing minimum hourly rate rather than the employees' tipped hourly rate.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.6(a).

Courts have discretion to modify the definition of the proposed class.  *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *see also Madden v. Midland Funding, LLC*, No. 11 Civ. 8149, 2017 WL 758518, at *13 (S.D.N.Y. Feb. 27, 2017).  In this case, the Court will not alter the class definition to encompass only tipped workers for Plaintiff's overtime and spread of hours claims because Plaintiff fails to show numerosity for any such class.

"Rule 23(a)(1) does not mandate that joinder of all parties be impossible -- only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007).  "[N]umerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011).  "However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including:  (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).  "Courts will generally decline to

9

certify classes comprising fewer than approximately 25 members absent extraordinary circumstances."  Joseph M. McLauglin, *McLaughlin on Class Actions* § 4:5 (13th ed., 2016); *see Novella v. Westchester Cty.*, 443 F. Supp. 2d 540, 546 (S.D.N.Y. 2006) ("When classes of fewer [than] 25 members have been certified, courts almost always have cited special circumstances warranting certification despite the small class size."), *vac'd on other grounds*, 661 F.3d 128 (2d Cir. 2011).

In support of his assertion of numerosity, Plaintiff adduces a list of employees Defendants produced in connection with the *Burgos* litigation, which Defendant Kim attests contains all present and former Gun Gang employees as of January 2016.  This list shows a total of 12 tipped employees, including Aveek who was a delivery driver before being promoted.  The list does not include Plaintiff and several of the delivery persons he identifies in his affidavit. Defendant Kim testifies that "a few" employees started working for Gum Gang since January 2016.

On this record, Plaintiff has shown the number of tipped employees is approximately 15 to 20 employees.  In light of the small class size, Plaintiff has failed to prove that numerosity is satisfied.  There is no evidence that the putative class is geographically diverse.  More importantly, Plaintiff fails to cite any evidence to support his assertions about special characteristics of the putative class members that, if true, would weigh in favor of finding joinder impracticable, such as Plaintiff's claim that they are largely immigrant laborers who are currently employed by Defendants and fear immigration consequences if they opt into the suit to bring FLSA claims.  *See, e.g.*, *Gortat v. Capala Bros.*, No. 07 Civ. 3629, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012), *aff'd*, 568 F. App'x 78 (2d Cir. 2014) (summary order).  Despite having sought certification of a subclass of tipped workers only, Plaintiff's submission fails to address

why numerosity is met for this subclass.  Absent competent evidence, Plaintiff has not shown that numerosity is satisfied even if the Court defined the class to include only tipped workers for his overtime claim and spread of hours claim.

In sum, because Plaintiff has failed to carry his burden to show the requirements of Rule 23 have been met as to his overtime claim and spread of hours claim, his motion for class certification on that basis is denied without prejudice to renewal.

B.     **Minimum Wage Claims – Tipped Employees Subclass**

Plaintiff also seeks certification of a subclass of tipped workers based on alleged minimum wage violations.  As with the overtime and spread of hours claims, Plaintiff relies exclusively on his affidavit, the three pages of timesheets and the single paystub.  For the reasons stated above, this evidence is insufficient to satisfy the numerosity, commonality or typicality requirements.  Plaintiff's motion to certify a class based on a minimum wage violation is denied without prejudice to renewal.

C.     **Wage and Hour Notices and Wage Statements**

The class is certified as to Plaintiff's claims regarding wage and hour notices and wage statements violations, but the class definition is amended to include only non-exempt employees who began work in or after March 2014, which is when Gum Gang first opened according to Defendants' unrebutted evidence.  Plaintiff has adduced insufficient evidence regarding these recordkeeping violations before March 2014.

Plaintiff has satisfied the numerosity requirement as to the later period.  Aveek testified that approximately 30 employees, not including managers, worked at the restaurant as of November 2015.  His estimate did not include individuals who may have stopped working there by November 2015, such as Plaintiff, or began working thereafter.  Plaintiff has thus shown the

11

likelihood that 40 or more individuals worked as non-exempt employees for Defendants between

March 2014 and through the filing of the Complaint in October 2016.  Numerosity is presumed

based on 40 putative class members, *Shahriar*, 659 F.3d at 252, and Defendants have not

rebutted that presumption. Even if the class consisted of between 30 and 39 members for claims

regarding the wage and hour notices and wage statements, this number is sufficient to satisfy the

numerosity requirement because the amount each class member could expect to recover would

be relatively small in light of the statutory damages available for these claims and the caps

thereon.  *See* N.Y. Lab. Law § 198(1-b), (1-d); *see generally In re Am. Exp. Merchants' Litig.*,

667 F.3d 204, 214 (2d Cir. 2012) ("Supreme Court precedent recognizes that the class action

device is the only economically rational alternative when a large group of individuals or entities

has suffered an alleged wrong, but the damages due to any single individual or entity are too

small to justify bringing an individual action.").  For instance, the failure to provide a wage

notice at the time of hiring entitles a plaintiff to recover $50 "for each work week during which

the employer continually failed to give this notice, up to a maximum of $2,500.00 until February

26, 2015; and [$50] per workday up to a maximum of $5,000.00 thereafter."  *Pineda v. Tokana*

*Cafe Bar Restorant Inc.*, No. 16 Civ. 1155, 2017 WL 1194242, at *4 (S.D.N.Y. Mar. 30, 2017).

The failure to provide a wage statement entitles plaintiff to recover $100 "for each work week

during which the employer failed to provide a pay stub, up to a maximum of $2,500.00, until

February 26, 2015; and [$250] per workday up to a maximum of $5,000.00 thereafter."  *Id.*

Commonality and typicality are also satisfied for these claims.  Unlike with his overtime

claim and spread of hours claim, Plaintiff adduces sufficient evidence that there was a class-wide

policy of not providing accurate wage statements and wage and hour notices to the employees.

As to the wage statements, i.e., paystubs, Plaintiff attests he was never provided any paystubs

and Defendant Kim admitted that an individual who worked in the kitchen was not provided with paystubs.  Further, the paystub Plaintiff adduces does not contain the Defendant Gum Gang's phone number, the dates of work covered by that payment of wages or tip credits, as required by New York law.  *See* N.Y. Lab. Law § 195(3).  Defendant Kim conceded that the paystub was the same as that provided to other employees.  Likewise, as to the wage and hour notices, the testimony of both Plaintiff and Aveek indicate that they never received the wage and hour notice upon hiring, and the single notice produced by Defendant does not include information such as the employer name, address and phone number, regular pay day or other information required under New Yok law.  *See id.* § 195(1)(a).

Accordingly, commonality and typicality are satisfied as Plaintiff and each proposed class member would assert substantively identical injuries resulting from a single, common policy and will make similar legal arguments to prove Defendants' liability at trial.  *See Masoud*, 2017 WL 448955, at *6 (asserting commonality and typicality are met for claim for failure to provide wage statements and notices under NYLL where the evidence indicates all individuals were subject to the same class-wide system); *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 138 (S.D.N.Y. 2015) ("The central feature for typicality is that plaintiffs assert that defendants committed the same wrongful acts in the same manner, against members of the class, and the court looks not at the plaintiffs' behavior, but rather at the defendant's actions.").

Defendants do not directly dispute that they had a class-wide policy with respect to wage and hour notices and wage statements.  Rather, they argue that their wage notices or statements contain all of the information required under NYLL and that Plaintiff merely asserts "non-substantive" deficiencies.  However, this argument goes solely to the merits and does not defeat class certification.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) ("When,

as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity -- [an alleged] failure of proof as to an element of the plaintiffs' cause of action -- courts should engage that question as a matter of summary judgment, not class certification."  (internal quotation marks omitted)).

Plaintiff has also shown that he satisfies Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  This prong addresses "concerns about the competency of class counsel and conflicts of interest."  *Wal-Mart*, 564 U.S. at 349 n.5.  To determine whether a named plaintiff will be adequate, courts must consider whether "(1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *accord Balverde*, 2017 WL 1954934, at *8.  Here, as noted, Plaintiff claims are typical of the class, and there is no evidence at this stage that his interests are antagonistic to the interest of other class members.  Because Plaintiff's alleged injuries are identical in nature to theirs, his interests and theirs are sufficiently aligned.  *See Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *22 (S.D.N.Y. Mar. 15, 2013) (finding plaintiff's adequacy "bolstered" by the conclusion that his claims satisfied the typicality requirement).  Further, Plaintiff's evidence regarding his counsel's experience litigating NYLL claims, including class actions, is sufficient to show that they are qualified, experienced and able to conduct the litigation.

Plaintiff has also shown that, as Rule 23(b)(3) requires, "[common] questions of law or fact predominate over any questions affecting only individual members."  *See Johnson*, 780 F.3d at 137.  "Rule 23(b)(3)'s predominance requirement is 'more demanding than Rule 23(a).'"  *Id.* at 138.  "Like . . . commonality . . . , a court examining predominance must assess (1) the

elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Id.* (internal quotation marks and citation omitted).  However, the court also must consider "whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." *Id.* (internal quotation marks and citation omitted).  For substantially the same reasons discussed above respecting commonality, predominance is satisfied.  Plaintiff has alleged, and proffered evidence, that non-exempt workers employed by Gum Gang were subject to a common, illegal policy of not receiving wage statements and wage and hour notices in compliance with New York law.  If Plaintiff prevails in showing the existence of a common policy at trial, the individual class members likely will prevail on their respective claims against Defendants.  Defendants fail to make any argument addressing why predominance would not be satisfied if the class was certified on these claims.

The superiority requirement also is satisfied.  Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  To determine whether superiority is proven, courts consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. Pro. 23(b)(3).  Courts in the Second Circuit regularly find that superiority is satisfied where, as here, "potential class members are aggrieved by the same policies, the damages suffered are small relative to the expense and burden of individual litigation, and some

potential class members are currently employed by the defendants." *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124, 2015 WL 5813382, at *6 (S.D.N.Y. Sept. 28, 2015).

Plaintiff also has demonstrated ascertainability, which is "a requirement [in the Second Circuit] that there be an identifiable class." *Balverde*, 2017 WL 1954934, at *9 (internal quotation marks omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* "In application, this means that it must be 'administratively feasible for a court to determine whether a particular individual is a member of the class [and t]he Court must be able to make this determination without having to answer numerous individualized fact-intensive questions." *Id.* (alterations in original). Here, the proposed class includes all individuals that worked as non-exempt employees since March 2014, and is sufficiently definite such that "no subjective criteria is required to determine the class' contours." *Flores*, 284 F.R.D. at 123. Rather, the class may "be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements," or testimonial evidence. *Id.* For this reason, and because ascertainability is not disputed, this requirement is met. *See Balverde*, 2017 WL 1954934, at *10 ("Defendants do not dispute that the class is sufficiently ascertainable. The Court thus finds that Plaintiffs have satisfied this implied requirement.").

## D. Appointment of Class Counsel

Plaintiff's counsel, the Lee Litigation Group, PLLC, is appointed to serve as class counsel. When appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Plaintiff's counsel at the Lee Litigation Group, PLLC are experienced litigators who have served as lead counsel in numerous wage and hour class and collective actions within this Circuit.  *See, e.g.*, *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748, 2017 WL 1233998, at *8 (S.D.N.Y. Mar. 31, 2017) (appointing the Lee Litigation Group, PLLC as class counsel for NYLL claims); *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 WL 3144375, at *8 (S.D.N.Y. May 19, 2016) (same).  Further, Plaintiff's counsel is responsible for identifying and investigating the claims in this action, and attest that they will commit the necessary resources to the lawsuit.  Plaintiff has shown that the appointment of Lee Litigation Group, PLLC as class counsel is warranted.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is GRANTED in part and DENIED in part.  It is hereby ordered that:

(1) Plaintiff is appointed the class representative to sue on behalf of a class of all non-exempt persons employed by Defendants on or after March 1, 2014, for Defendants' alleged violations of the NYLL based on failure to provide proper wage and hour notices and failure to provide proper wage statements.

(2) Lee Litigation Group, PLLC is appointed class counsel.

(3) By July 14, 2017, Plaintiff shall file any pre-motion letter in accordance with the Court's individual rules for any motion to renew the class certification motions denied without prejudice herein.  Defendants shall respond by July 21, 2017.

(4) By July 14, 2017, Defendant shall file any objections and proposed revisions to Plaintiff's proposed "Notice of Lawsuit" filed in connection with this motion, Docket Number 31-1.

(4) A pre-motion conference and/or status conference will be held on July 26, 2017, at 10:30 a.m.

The Clerk of Court is respectfully directed to close the motion at Docket Number 28.

Dated: June 28, 2017
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

18